# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA,
# NORTHERN DIVISION

| | |
|---|---|
| In re: JIT INDUSTRIES, INC.<br>EIN: xx-xxx7267<br><br>Debtor.<br>_____<br><br>JIT INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO FINANCIAL<br>LEASING, INC., et. al<br><br>Defendants. | Case No.: 18-80892-CRJ-11<br><br>CHAPTER 11<br><br><br><br><br><br><br>Adversary Proceeding No.: 18-80069 |

**PLAINTIFF'S RESPONSE TO MOTION TO QUASH SUBPOENA**

COMES NOW, the Plaintiff, JIT Industries, Inc. (the "Debtor") and files this Response to Rod Hill, Philip Hill, and Danny Overbee Motion to Quash Subpoena as follows:

1. This adversary proceeding concerns the satisfaction of liabilities of the Debtor and its former affiliate, JIT Military Sales, an Alabama General Partnership ("Military Sales").

2. The Debtor has not resolved this case with Defendant American Express National Bank or determined whether American Express National Bank ("AMEX") has been paid any funds to satisfy its alleged debts; at a hearing before this Court in September 2018, counsel for AMEX informed this Court that it opposes dismissal of this proceeding.

3. In the summer of 2017, the Debtor owned a membership interest in Military Sales.

4. In a deposition that occurred on September 13, 2018 in a related lawsuit, Philip Hill, a general partner of Military Sales, testified that he, Rod Hill, and Danny Overbee took each

took $60,000.00 or more out of Military Sales's receiver bank account in 2017 and kept it for personal use:

> Q. All right. And did any of the funds that ended up in Progress Bank get paid back out to you personally?
> A. Yes.
> Q. More than once or just once?
> A. More than once.
> Q. Okay. If I got the bank statements for the partnership account at Progress Bank, would I be able to determine what amounts went to you?
> A. Absolutely.

A true and correct excerpt of the Philip Hill's deposition transcript is attached and incorporated herein as Exhibit "A," p. 18, ¶¶ 11-21.

5. When pressed on how much of Military Sales' money he took, Philip Hill could not answer with specificity. *See id.*

6. Rod Hill similarly testified in a deposition on September 12, 2018 that he personally took between $60,000.00 and $100,000.00 from Military Sales's receiver bank account. A true and correct excerpt of the Rod Hill's deposition transcript is attached and incorporated herein as Exhibit "B."

7. Rod Hill further testified that he did not report these transfers to the Internal Revenue Service as personsl income. *Id.* at p. 388, ¶¶ 5-14; p. 389, ¶¶ 10-19.

8. Messrs. Hill, Hill, and Overbee owed fiduciary duties to both Military Sales's creditors and to the Debtor, as an owner of the entity; their conversion of receiver funds relates directly to the facts at issue in this proceeding.

9. Rod Hill's failure to report the transfers as income to the IRS supports the Debtors claim that Messrs. Hill, Hill, and Overbee are in possession of funds belonging to the Debtor and/or Defendant AMEX.

10. The Debtor avers that it may possess claims against Messrs. Hill, Hill, and Overbee for breach of fiduciary duty, 11 U.S.C. § 547, and 11 U.S.C. § 548 that may be asserted in this adversary proceeding or in another proceeding. The Debtor owes a duty to its bankruptcy estate to pursue such claims.

11. Because Philip Hill and Rod Hill could not testify with specificity regarding how much money they took from the Military Sales's receiver bank account for personal use and to whom they may have transferred it, the subpoena at issue is necessary for the Debtor to fully investigate and assert its claims against Messrs. Hill, Hill, and Overbee and any subsequent transferees.

12. Further, this subpoena is necessary to evaluate the defenses asserted by AMEX in this current proceeding, including whether or not Messrs. Hill, Hill, and Overbee, as the receivers of Military Sales, paid AMEX any money or kept all the funds for themselves.

13. The Debtor had previously served a Rule 2004 production of documents on Military Sales that should have included documents that would reveal the details of these alleged transfers of funds. However, Military Sales failed to produce responsive documents for that Rule 2004 examination. Military Sales did not object or otherwise oppose the Rule 2004 examination.

14. Since Messrs. Hill, Hill, and Overbee solely control Military Sales, the present need for this subpoena for the Progress Bank records is apparent.

WHEREFORE, premises considered, JIT Industries, Inc. requests that this Honorable Court enter an Order overruling Rod Hill, Philip Hill, and Danny Overbee's Motion to Quash Subpoena; and grant such further relief as this Court deems just and proper.

Respectfully submitted this 5th day of October, 2018.

/s/ Tazewell T. Shepard IV
Tazewell T. Shepard III
Tazewell T. Shepard IV
*Attorneys for Plaintiff*

**SPARKMAN, SHEPARD & MORRIS, P.C.**
P.O. Box 19045
Huntsville, AL 35804
Tel: (256) 512-9924

## CERTIFICATE OF SERVICE

This is to certify that I have this 5th day of October, 2018 served the foregoing document upon the below-listed parties by electronic service through the Court's CM/ECF system and/or by placing a copy of same in the United States Mail, postage pre-paid.

Richard Blythe, Esq.
Office of the Bankruptcy Administrator
P. O. Box 3045
Decatur, AL 35602

Michael. A. Harrison
Key, Greer, Harrison & Casey
P.O. Box 360345
Birmingham, AL 35236

Kevin D. Heard, Esq.
Heard, Ary & Dauro, LLC
303 Williams Avenue, Ste. 921
Huntsville, AL 35801

Kevin C. Gray
Bradley Arant Boult Cummings LLP
200 Clinton Ave. W. Ste 900
Huntsville, AL 35801

Progress Bank and Trust
C/o David Lee Nast, Registered Agent
201 Williams Ave.
Huntsville, AL 35801

*/s/ Tazewell T. Shepard IV*
Tazewell T. Shepard IV

```
 1              IN THE CIRCUIT COURT OF

 2                MADISON COUNTY, ALABAMA

 3

 4     CASE NUMBER:  47-CV-2017-901539

 5

 6     ROD HILL, et al.,

 7     PLAINTIFFS,

 8

 9     V.

10

11     PEOPLES BANK OF ALABAMA, et al.,

12     DEFENDANTS.

13

14                 DEPOSITION TESTIMONY OF:

15                       PHILLIP HILL

16                    September 13, 2018

17

18              S T I P U L A T I O N S

19              IT IS STIPULATED AND AGREED by and

20     between the parties through their respective

21     counsel that the deposition of PHILLIP HILL

22     may be taken before Mallory Bradberry Gray, a

23     Court Reporter and Notary Public for the
```

1  any personal involvement in withdrawing the
2  money that was on hand in the bank account
3  and moving it over to Progress Bank?
4      A.   Yeah, we all had to sign.
5      Q.   In other words, y'all had to sign
6  pieces of paper with Progress Bank to set up
7  the account?
8      A.   Right.  We had to sign with Peoples
9  Bank to remove it and with Progress Bank
10 to -- to put it in.
11     Q.   All right.  And did any of the funds
12 that ended up in Progress Bank get paid back
13 out to you personally?
14     A.   Yes.
15     Q.   More than once or just once?
16     A.   More than once.
17     Q.   Okay.  If I got the bank statements
18 for the partnership account at Progress Bank,
19 would I be able to determine what amounts
20 went to you?
21     A.   Absolutely.
22     Q.   How would it have gone to you?  Wire
23 transfer or checks?

1    A.    Checks.

2    Q.    Okay.  And as you sit here today,
3 what amount of those funds went to you
4 personally?

5    A.    To be honest, I really couldn't tell
6 you the amount.

7    Q.    Okay.  Can you tell me whether we're
8 talking about $5,000 or whether we're talking
9 about $60,000?

10   A.    Probably more to the 60 range.

11   Q.    I think that's what Rod said, but I
12 can't remember.  I think he said --

13   A.    I'm not sure of the exact figure,
14 but it's probably in that range.

15   Q.    But, again, I don't have to take
16 your word for it.  I can just go to Progress
17 Bank --

18   A.    Sure.

19   Q.    Okay.  Thank you.

20         Other than the inventory and your
21 share of the cash that you had a check
22 written to you for, are there any other
23 assets that were there?

```
1                    CERTIFICATE

2    STATE OF ALABAMA        )
                             ) ss:
3    COUNTY OF MARSHALL      )

4

             I hereby certify that the above and
5    foregoing proceeding was taken down by me by

6    stenographic means, and that the content

7    herein was produced in transcript form by

8    computer aid under my supervision, and that

9    the foregoing represents, to the best of my

10   ability, a true and correct transcript of the

11   proceedings occurring on said date at said

12   time.

13           I further certify that I am neither

14   of counsel nor of kin to the parties to the

15   action, nor am I in anywise interested in the

16   result of said cause.

17
                     /s/Mallory B. Gray
18                   Mallory B. Gray, CCR
                     CCR #558, Expires 9/30/2018
19                   Commissioner for the
                     State of Alabama at Large
20                   Notary Public, Expires 02/19

21

22

23
```

```
 1              IN THE CIRCUIT COURT OF

 2                MADISON COUNTY, ALABAMA

 3

 4    CASE NUMBER:  47-CV-2017-901539

 5

 6    ROD HILL, et al.,

 7    PLAINTIFFS,

 8

 9    V.

10

11    PEOPLES BANK OF ALABAMA, et al.,

12    DEFENDANTS.

13

14                DEPOSITION TESTIMONY OF:

15                    RODNEY HILL, JR.

16     September 12th, 2018 and September 13, 2018

17

18             S T I P U L A T I O N S

19          IT IS STIPULATED AND AGREED by and

20    between the parties through their respective

21    counsel that the deposition of RODNEY HILL,

22    JR., may be taken before Mallory Bradberry

23    Gray, a Court Reporter and Notary Public for
```

1       The money that was taken out of the
2  Peoples Bank account, the 6 or $700,000 that
3  went into the Progress account, do statements
4  exist that would show the activity from
5  May 2017 to date?
6            MR. HEARD:  Object to the form.
7            THE WITNESS:  I don't have them, but
8  we could probably -- I mean, I'm sure they
9  exist.  I don't have them.
10      Q.   (By Mr. Gillespy)  Yeah, all I asked
11  was whether they exist.
12            MR. HEARD:  Yeah.
13      Q.   (By Mr. Gillespy)  And if you don't
14  have them, are they under your custody or
15  control?  Does somebody have them?
16      A.   I'd have to go to --
17            MR. HEARD:  If we have them -- if we
18  have them, we'll provide them.
19            THE WITNESS:  I'd have to go to
20  Progress and get them.  That's all I would
21  know.
22      Q.   (By Mr. Gillespy)  Well, who was the
23  banking guy for y'all, you or Danny?

1  A. Danny was the banking guy.
2  Q. I mean, you know, banks send
3  statements every month. Would they send them
4  to Danny?
5  A. I don't know if we did paper
6  statements, is what I'm saying.
7  Q. Ah, could be paperless.
8  A. So I don't know.
9  Q. Yeah, sure.
10  A. I don't know.
11  Q. Okay.
12  A. I don't remember.
13  Q. And if we look at those statements
14  and get them, will it show that any of that
15  money went to you?
16  A. Yes.
17  Q. How much of it went to you?
18  A. I don't have a number for that.
19  Q. Okay. Give me an estimate. Are we
20  talking about $5? Are we talking about
21  $200,000?
22  A. Maybe 60, 80, 100.
23  Q. Why would that be getting paid to

1 you if you're working over at HillPro and
2 y'all aren't really doing anything with the
3 business? In other words, what was the
4 purpose of that payment?
5     MR. HEARD: Object to the form.
6     THE WITNESS: We actually were
7 trying to run both of them. We were trying
8 to do both of them.
9     Q. (By Mr. Gillespy) That's fine. So
10 you're saying it was to compensate you for
11 the services you were providing?
12     A. Right, right.
13     Q. Is that something y'all agreed among
14 yourselves of what would get paid?
15     A. Right.
16     Q. It's 60 or $80,000?
17     A. I'd have to put a number on it.
18 Yeah, I'd have to look, but somewhere around
19 there.
20     Q. Okay. And did y'all -- all three
21 get payments like that?
22     A. Correct.
23     Q. Okay. And have all the accounts

1   payable that were listed on the report of
2   Mr. Heard from May of '17, have those been
3   paid?
4        A.   All the what?  I'm sorry.
5        Q.   All the accounts payable of the
6   partnership that were listed on Mr. Heard's
7   areas report as of May '17, have those been
8   paid?
9        A.   Not all of them, no.
10       Q.   All right.  Have y'all hired anybody
11  to prepare a tax return for your partnership?
12       A.   No.
13       Q.   Have y'all attempted to comply with
14  the tax reporting requirements?
15            MR. HEARD:  Object to the form as to
16  the word "compliance."
17       Q.   (By Mr. Gillespy)  Okay.  Let me see
18  what other word I can use.
19            Are y'all filing anything with the
20  IRS about the business of the partnership?
21       A.   Once we figure it out, yes.  We
22  haven't currently, no.
23       Q.   Well, haven't you been in control of

1   this since May of '17?

2   A.   Right.

3   Q.   So we're over a year, aren't we?

4   A.   Right.

5   Q.   So you've paid -- there's been no --
6   well, so for the record, there's been no tax
7   return filed with the IRS; is that right?

8   A.   Correct.

9   Q.   And you haven't hired anybody to do
10  that for you?

11  A.   Not currently, no.

12  Q.   All right.  And why is that?

13       MR. HEARD:  Object to the form.

14       THE WITNESS:  Don't know.

15  Q.   (By Mr. Gillespy)  Who would I need
16  to talk to to ask why y'all are making a
17  decision not to file tax return with the IRS?

18       MR. HEARD:  Object to form.  I'm not
19  sure that's inside of your scope of your
20  designation, and what they're currently doing
21  is really not relevant to this lawsuit.

22       MR. GILLESPY:  I disagree.

23       THE WITNESS:  I didn't -- you'll

```
1   have to give me the question again.
2       Q.   (By Mr. Gillespy)  If you don't
3   know, who's going to know why a decision was
4   made not to file a tax return yet?
5            MR. HEARD:  Same objection.
6            THE WITNESS:  We don't -- I don't
7   know.  I don't know who would know.  Danny
8   may know what he's got planned.  I don't
9   know.
10      Q.   (By Mr. Gillespy)  And are you still
11  filing your personal tax return?
12      A.   Correct.
13      Q.   All right.  And are you listing on
14  those tax returns income from the
15  partnership?
16      A.   Not from '17, no.
17      Q.   From May 2017 forward, you're not
18  listing that?
19      A.   Huh-uh, I did not.
20      Q.   Why not?
21           MR. HEARD:  Object to the form.
22           THE WITNESS:  We didn't know how to
23  do it all.
```

|    |                                                    |
|----|----------------------------------------------------|
| 1  | CERTIFICATE                                        |
| 2  | STATE OF ALABAMA    )                              |
|    |                     ) ss:                          |
| 3  | COUNTY OF MARSHALL  )                              |
| 4  |                                                    |

I hereby certify that the above and foregoing proceeding was taken down by me by stenographic means, and that the content herein was produced in transcript form by computer aid under my supervision, and that the foregoing represents, to the best of my ability, a true and correct transcript of the proceedings occurring on said date at said time.

I further certify that I am neither of counsel nor of kin to the parties to the action, nor am I in anywise interested in the result of said cause.

/s/Mallory B. Gray
Mallory B. Gray, CCR
CCR #558, Expires 9/30/2018
Commissioner for the
State of Alabama at Large
Notary Public, Expires 02/19